IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SLICEX, INC.,<br><br>    Plaintiff,<br><br><br><br>        vs.<br><br><br>AEROFLEX COLORADO SPRINGS, INC.,<br>f/k/a AEROFLEX UTMC<br>MICROELECTRONIC SYSTEMS, INC.,<br><br>    Defendant. | MEMORANDUM DECISION AND<br>ORDER GRANTING DEFENDANT'S<br>RULE 52(c) MOTION<br><br><br><br><br><br>Case No. 2:04-CV-615 TS |

This matter came before the Court for a four-day bench trial beginning on July 18, 2006.

At the close of Plaintiff's case, Defendant orally moved for judgment as a matter of law, pursuant

to Rule 50 of the Federal Rules of Civil Procedure.[1]  The Court took the matter under

advisement.  At the close of the trial, the Court granted Defendant's Motion as it related to

Plaintiff's breach of contract claim.  The following order sets forth the Court's reasons for

granting the Motion.

---

[1]The Court would note that since this was a bench trial not a jury trial, a motion under
Rule 52(c), rather than Rule 50 is appropriate and the Court will treat Defendant's Motion as if it
were made pursuant to Rule 52(c).

# I.  RULE 52(c) STANDARD

Rule 52(c) states:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all evidence.  Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.[2]

While Rule 52(c) parallels Rule 50(a),[3] the role of the Court under these similar rules is drastically different.  Under Rule 50, the Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."[4] The Tenth Circuit has stated, however—in the context of Rule 52(c)'s predecessor, Rule 41(b)[5]—that "[i]n granting a dismissal under [Rule 52(c)], the trial court may weigh the evidence, assess the witnesses' credibility, and make findings of fact."[6]

---

[2]Fed.R.Civ.P. 52(c).

[3]*Id*.  Advisory Committee Notes to 1991 Amendment.

[4]*Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 135 (2000).

[5]Rule 52(c) replaced former Rule 41(b).  *See* Fed.R.Civ.P. 52(c), Advisory Committee Notes to 1991 Amendment.

[6]*Crawford v. Northeastern Oklahoma State Univ.*, 713, F.2d 586, 588 (10th Cir. 1983). Rule 52(c) replaced Rule 41(b) in 1991.

## II.  DISCUSSION

### A.    PLAINTIFF'S BREACH OF CONTRACT CLAIM

Plaintiff and Defendant have entered into four separate contracts.  Plaintiff is suing on three of these contracts.  "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[7]  Plaintiff argues that Defendant breached the non-solicitation provisions contained in those contracts.  In order to determine whether Defendant breached any of the contracts, it must first be determined which of those contracts are at issue here.

### B.    WHICH CONTRACT OR CONTRACTS APPLY

The parties have entered into four consulting agreements.  Plaintiff has only sued on three of these agreements: the November 1, 2002 Agreement; the February 12, 2003 Agreement; and the October 23, 2003 Agreement.

---

[7]*Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 391 (Utah 2001) (citing *Nuttall v. Berntson*, 30 P.2d 738, 741 (Utah 1934)).  The Court would note that the November 1, 2002 Agreement designates Utah as the applicable law (*See* Plaintiff's Exhibit 1) and the February 12, 2003 Agreement and the October 23, 2003 Agreement state that New York law applies (*See* Plaintiff's Exhibits 3 and 5).  The Court would also note that the parties throughout the course of this litigation have applied Utah law, not New York law, and neither party has argued that New York law governs this dispute.  Regardless, the Court finds that the applicable standard of review is the same.
*See Cleveland Wrecking Co. v. Hercules Const. Corp.*, 23 F.Supp. 2d 287, 292 (E.D.N.Y. 1998) ("To establish a claim for breach of contract under New York law, a plaintiff must prove: (1) that an agreement existed between it and defendant; (2) what the respective obligation of the parties were; (3) that the plaintiff performed its obligation under the agreement; (4) that the defendant breached the agreement by failing to perform its obligations; and (5) that the plaintiff suffered damages as a result of the breach.").

The November 1, 2002 Agreement contains the following pertinent language:

> 4)  *Nonsolicitation.*  UTMC agrees that UTMC shall not, for a period of three years immediately following the termination of this agreement, whether directly or indirectly . . . solicit or take away, or attempt to solicit or take away, any employee of SliceX, Inc., either for UTMC's own benefit or for the benefit of any other person or entity.  SliceX, Inc., agrees to the same nonsolicitation clause as above.

> 11)  *Entire Agreement.*  This Agreement and the Exhibits hereto from the entire agreement of the parties and supersede any prior agreements between them with respect to the subject matter hereof.

The February 12, 2003 Agreement states, in pertinent part:

> 5)  *Nonsolicitation.*  AEROFLEX UTMC agrees that AEROFLEX UTMC shall not, for a period of three years immediately following the termination of this agreement, whether directly or indirectly . . . solicit or take away, or attempt to solicit or take away, any employee of SliceX, Inc., either for AEROFLEX UTMC's own benefit or for the benefit of any other person or entity. . . .

> 12)  *Entire Agreement.*  This Agreement and the Exhibits hereto form the entire agreement of the parties and supersede any prior agreements between them with respect to the subject matter hereof.

The October 23, 2003 Agreement states, in pertinent part:

> 4)  *Nonsolicitation.*  AEROFLEX agrees not to initiate contact (except for those contacts made in the ordinary course of business) with any officer, director or employee of SliceX or any customers, clients, or accounts of SliceX regarding SliceX's business or operation, except with the express permission of SliceX. Additionally, AEROFLEX agrees not to solicit or entice (other than normal employment discussions not initiated by AEROFLEX) for employment any of the current employees of SliceX for purposes of hiring such employee during the period of this Agreement and for a period of one year thereafter, without the prior written consent of SliceX.  SliceX agrees to the same nonsolicitation clause as above.

      12)    *Entire Agreement.*  This Agreement and the Exhibits hereto form the entire agreement of the parties and supersede any prior agreements between them with respect to the subject matter hereof.

Plaintiff argues that each of these Agreements are separate and distinct, and that the non-solicitation clause in the October 23, 2003 Agreement does not supersede the others, despite the integration clause contained in that agreement.  Plaintiff also argues that the non-solicitation provisions in each of the contracts apply.  Defendant argues, however, that the integration clause does apply to the other agreements and some of the provisions of the prior agreements are superseded by the October 23, 2003 Agreement, particularly those that appear in all of the agreements, including the non-solicitation provisions.

The Court finds that each of the three contracts are separate and distinct.  Each agreement concerned different projects which SliceX was working on for Aeroflex.  Additionally, each agreement contained different rates for the work that was being conducted on those projects and different payment procedures.  Further, under Defendant's interpretation, some provisions of the contracts would be superseded while others would remain intact.  The Court finds this to be an unreasonable interpretation of the contract language.  Thus, while the Court finds, as a result of the integration clauses, that each agreement was the entire agreement of the parties relating to the particular project that is the subject of the agreement, the October 23, 2003 Agreement was not meant to supersede the parties' prior agreements entirely and the integration clause in the October 23, 2003 Agreement does not eliminate the prior non-solicitation provisions.

Having determined that the prior non-solicitation provisions are applicable, it must be determined whether Defendant's conduct here constitutes a breach of those provisions.  The

5

Court finds that the language of the November 1, 2002 Agreement and the February 12, 2003 Agreement is substantially the same and is broader than the language of the October 23, 2003 Agreement.  Thus, the Court will consider whether Defendant's actions violate the non-solicitation provisions found in those contracts. Before doing so, however, the Court must interpret the language of those contracts.

C.      INTERPRETATION OF THE CONTRACTS

        The Court finds that the agreements are not ambiguous, thus parol evidence is not necessary.  Further, any ambiguity that may exist must be construed against the drafter of the agreements, Plaintiff here.

        The November 2002 Agreement and the February 2003 Agreement state that Defendant shall not, for a period of three years immediately following the termination of those agreements, whether directly or indirectly solicit or take away, or attempt to solicit or take away, any employee of SliceX, Inc., either for Defendant's own benefit or for the benefit of any other person or entity.

        The agreements do not define the word "solicit."  BLACK'S LAW DICTIONARY defines solicit as: "To appeal for something; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make petition to; to plead for; to try to obtain . . . ."[8]  It goes on

_____

        [8]BLACK'S LAW DICTIONARY 1392 (6th ed. 1991).

to state that "[t]he term implies personal petition and importunity addressed to a particular individual to do some particular thing."[9]

The agreements also fail to define "take away" and the Court can find no case law which directly defines the phrase.  The Court finds that "take away" must be interpreted as requiring Defendant to take a specific, directed action to hire away one of Plaintiff's employees.  It must be an action which is focused on Plaintiff's employee, and not to the public generally.  The common meaning of the word "take" anticipates some action on the part of Defendant.  Case law supports this interpretation.

In *J.K.R. Inc. v. Triple Check Tax Services, Inc.*,[10] a Florida court addressed similar language in a non-solicitation provision as it related to the solicitation of clients.  The court held that "[t]he words 'call upon, solicit, divert or take away' in the parties' agreement forbid [former employees] from taking proactive steps to obtain [their former employer's] clients, but do not disallow them from accepting former clients who actively seek their assistance."[11]  A number of other courts have similarly held that non-solicitation provisions are not violated where former employees are first contacted by clients of their former employers and then form relationships with those clients.[12]  Therefore, the Court finds that in order for Defendant to "solicit or take

---

[9]*Id.*

[10]*J.K.R., Inc. v. Triple Check Tax Service, Inc.*, 736 So.2d 43, 43 (Fla. Dist. Ct. App. 1999).

[11]*Id.* at 43.

[12]*See e.g. Kennedy v. Metropolitan Life Ins. Co.*, 759 So.2d 363, 367–68 (Miss. 2000) (holding that non-competition agreement did not preclude former employee from developing relationship with clients of former employer where clients initiated contact); *Akron Pest Control*

away" Plaintiff's employees, Defendant must have taken some proactive or affirmative step toward doing so.  It would be unreasonable to interpret the contract language to mean that Defendant was subject to a blanket prohibition from hiring SliceX employees during the period covered by the non-solicitation provisions.

If the Court were to expand the meaning of "take away" to mean that Defendant could not hire one of Plaintiff's employees during the three-year period, regardless of who initiated the contact, the Court would have to read the term "solicit" out of the contract because it would be a superfluous term.[13]   Further, this broad reading of the phrase "take away" would deprive meaning from the rest of the provision which states that Defendant may not solicit or take away an employee either for Defendant's own benefit *or for the benefit of any other person or entity*.

Further, reading the contract language as broadly as Plaintiff seeks would result in patent unfairness and would likely result in the subject contracts being void as against public policy. The idea that Aeroflex would be required to refuse to hire interested SliceX employees and would have to, in fact, turn them away if they sought employment with Aeroflex, even if the employee was the first to make contact, would punish both Aeroflex and the employees of SliceX.  SliceX employees should not be deprived of an opportunity to seek more gainful

---

*v. Radar Exterminating Co.,* 455 S.E.2d 601, 603 (Ga. Ct. App. 1995) (holding that "[m]erely *accepting* business that [former employee] was forbidden otherwise to seek out for a period of time does not in any sense constitute a solicitation of that business.").  *But see FCE Benefit Administrators, Inc. v. George Washington Univ.*, 209 F.Supp. 2d 232, 239–40 (D. D.C. 2002) (holding that even though clients made first contact, former employee violated non-competition clause because she assumed an active role in client's decision-making process).

[13]Restatement (Second) of Contracts § 203, Comment b states: "Since an agreement is interpreted as a whole, it assumed in the first instance that no part of it is superfluous."

employment merely because they were the victims of Plaintiff's business incompetence.  Courts

have rejected the same types of arguments that Plaintiff is making here.

      In *Akron Pest Control*, the court addressed a similar situation.  There, Sellers, a former

employee of Radar, entered into a non-solicitation clause with Radar as part of his employment.[14]

Sellers thereafter established his own company, Akron Pest Control.[15]  It was undisputed that

Akron did business with former Radar clients and it was also undisputed that Sellers in no way

sought out former Radar customers.[16]  Radar brought suit alleging that Sellers was guilty of

breach of contract.[17]  In that case, Radar took "the position that the nondisclosure language

'could be understood by the parties to mean that Appellant Sellers *would refuse and, in fact, turn*

*away* pest control business if contacted by any customers [subject to the agreement] and refuse to

hire and, in fact, turn away employees of [Radar] as of the date of the stock sale if they came to

him looking for employment."[18]  The court refused such a broad reading of the non-solicitation

clause.  The court held that in order for Sellers to violate the non-solicitation agreement it "would

require some affirmative action on his part."[19]  "Merely *accepting* business that Sellers was

forbidden otherwise to seek out for a period of time does not in any sense constitute a solicitation

---

[14]455 S.E.2d at 602.

[15]*Id*.

[16]*Id*.

[17]*Id*.

[18]*Id*.

[19]*Id*. at 603.

of that business."[20]  Based on the case law cited above and the Court's interpretation of the

contract language, the Court finds that "take away" must be interpreted as requiring Defendant to

take a specific, directed action to hire away one of Plaintiff's employees.  It must be an action

which is focused on Plaintiff's employee, and not to the public generally.

D.      WHETHER DEFENDANT BREACHED THE NON-SOLICITATION PROVISIONS

        Having determined the scope of the non-solicitation provisions, the Court now turns to

the question of whether Defendant violated those provisions.  After carefully reviewing all of the

evidence, the Court finds that it did not.

        The Court would note, at the outset, that the burden is on Plaintiff to prove that

Defendant breached the non-solicitation provisions.  The Court makes the following factual

findings based on the evidence presented at trial.

        In 2002, a number of individuals formerly employed by TDK sought employment after

job losses at TDK.  A handful of individuals found that employment with Plaintiff SliceX in

Grass Valley, California.  Each of these employees signed employment contracts which set out

the details of their employment, including salary and hours to be worked.  Within a few months

of working at SliceX, those terms of the contract stopped being met, as a result of cash flow

issues with SliceX.  The testimony at trial revealed that the employees at the Grass Valley facility

were paid only 50% of their salary at times, and that the salary level eventually went up to 80%,

but never got above that level.  The testimony also revealed that, at times, SliceX failed to make

payroll on time and that the employees were sometimes not paid.  Additionally, the employees

_____

[20]*Id.*

10

were paid at different rates depending on the hours they worked.  If an employee worked more than his or her hours, he or she was paid as a salaried employee and was not compensated for that extra work.  If, however, the employee worked less than his or her hours, he or she was paid at an hourly rate.  The Grass Valley facility also experienced other problems, such as a lack of work, problems with reimbursement for expenses incurred by employees, problems with insurance coverage, as well as a loss of internet access, which brought work at the facility to a halt.

After time, employees at the Grass Valley facility began to seek other employment.  The testimony revealed that as of approximately April 2004, seven of the original eleven Grass Valley employees had left.[21]  Around the end of April or the beginning of May, three more employees—Steve Levy, Dave Rosky, and Tom Grundy—left to work for Aeroflex.  At that point, Aeroflex pulled its work from SliceX and SliceX closed down the Grass Valley office.

At some time in the summer of 2003, Aeroflex learned of SliceX financial troubles and became concerned.  Aeroflex began to investigate possible options.  In a memo dated August 19, 2003, Aeroflex identified three possible scenarios: (1) Aeroflex could start up its own design center; (2) Aeroflex could acquire the SliceX Grass Valley design center; or (3) Aeroflex could find an alternate subcontractor or could continue to rely on SliceX.[22]  In early 2004, Aeroflex approached Steve Levy about the possibility of obtaining a high speed internet connection at his home so that he could continue to work on projects, even when the Grass Valley facility lost

---

[21]None of these seven employees went to work for Aeroflex.

[22]Plaintiff's Exhibit 15.

internet access.  After some investigation, Levy determined that this was not a viable option and this proposal went no further.

After time, Aeroflex decided that they would open up their own design center.  To this end, Aeroflex placed a job posting on Monster.com in November 2003, which was later re-posted in February 2004.  It was to the February 2004 posting that three SliceX employees responded.  Those employee were Jackie Snyder, Steve Levy, and Tom Grundy.  The testimony presented at trial was that no one at Aeroflex told these individuals about this posting and that no one at Aeroflex solicited these individuals.  Rather, each of these individuals responded to the posting on their own, without assistance from anyone at Aeroflex.

Aeroflex interviewed both Jackie Snyder and Steve Levy for the position.  Tom Grundy was not interviewed.  Jackie Snyder was never offered the position because she informed Aeroflex that she had obtained other employment.  Steve Levy was offered the position, accepted it, and is currently employed by SliceX.  Tom Grundy later received a contractor position with Aeroflex.

As for Dave Rosky, he testified that he called David Kerwin at Aeroflex and inquired about possible contract work.  Kerwin advised Rosky that no work was currently available, but told him to send his resume to Bob Lee in Aeroflex's human resources department.  Rosky, like Grundy, currently has a contract with Aeroflex.

Jackie Snyder, Steve Levy, Dave Rosky, and Tom Grundy all testified that no one at Aeroflex told them about the posting on Monster.com, that no one from Aeroflex approached them about possible work for Aeroflex, and that no one from Aeroflex solicited them.  David

12

Kerwin, an employee of Aeroflex, testified similarly.  The Court finds that each of these witness was very credible.

The Court finds that Plaintiff has failed to produce any evidence which shows that Defendant took any proactive step to obtain former SliceX employees.  At most, Plaintiff has shown that Defendant posted a job description on Monster.com that was similar to the work being done by SliceX, and that SliceX employees responded to the posting.  If the Court were to find that this action was sufficient to show a breach of the non-solicitation agreement, it would cripple an employer's ability to advertise positions and seek out employees, as well as an employee's ability to obtain work.  Further, there has been no evidence presented that Defendant made the first contact with Snyder, Levy, Rosky, or Grundy, or informed them of the posting or other possible opportunities with Aeroflex.  Instead, each of these individuals testified, without exception, that it was they who made first contact with Aeroflex, not the other way around. David Kerwin of Aeroflex confirms this.  The Court, as noted above, finds that all of these witnesses were very credible.  Thus, there has been no evidence that Defendant took any action to hire away SliceX employees.

### III.  CONCLUSIONS OF LAW

1.      Utah law applies in this matter.  Even if the Court were to find that New York law were to apply, the standard would be the same.[23]

2.      The Court finds that each of the three separate contracts are at issue here.

3.      The key language that must be interpreted is as follows: Defendant shall not, for a period

---

[23]*See supra* note 6.

of three years immediately following the termination of this agreement, whether directly or indirectly solicit or take away, or attempt to solicit or take away, any employee of SliceX, Inc., either for Defendant's own benefit or for the benefit of any other person or entity.

4.      Solicit means: "To appeal for something; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make petition to; to plead for; to try to obtain . . . ."[24]  "The term implies personal petition and importunity addressed to a particular individual to do some particular thing."[25]

5.      The Court finds that "take away" must be interpreted as requiring Defendant to take a specific, directed action to hire away one of Plaintiff's employees.  It must be an action which is focused on Plaintiff's employee, and not to the public generally.

6.      The Court finds that the action of posting an opening on Monster.com is, as a matter of law, insufficient to show that Defendant solicited or took away, or attempted to solicit or take away, any employee of SliceX, Inc., either for Defendant's own benefit or for the benefit of any other person or entity.  Thus, the Court finds that Defendant did not breach the non-solicitation clauses of the agreements and, therefore, did not breach its contracts with SliceX.  As a result, Plaintiff's breach of contract claim fails.

---

[24]BLACK'S LAW DICTIONARY 1392 (6th ed. 1991).

[25]*Id.*

IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Rule 52(c) Motion is GRANTED.  The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff on Plaintiff's breach of contract claim.  It is further

ORDERED that Plaintiff inform the Court, in writing, within five (5) days of this Order if it wishes to pursue its cause of action based on the implied covenant of good faith and fair dealing.

DATED   July 25, 2006.

BY THE COURT:

_____
TED STEWART
United States District Judge